**RYLEY CARLOCK & APPLEWHITE**
One North Central Avenue, Suite 1200
Phoenix, AZ 85004-4417
Telephone 602.440.4800
Fax 602.257.9582

John C. Lemaster (No. 011588)
jlemaster@rcalaw.com
Sheryl A. Sweeney (No. 009863)
ssweeney@rcalaw.com
Samuel L. Lofland (No. 026653)
slofland@rcalaw.com
Naomi E. Thurston
nthurston@rcalaw.com (No. 029863)
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ROOSEVELT IRRIGATION DISTRICT, an irrigation district, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA; DEPARTMENT OF INTERIOR; BUREAU OF RECLAMATION; SALT RIVER VALLEY WATER USERS' ASSOCIATION, an Arizona corporation, and the SALT RIVER PROJECT AGRICULTURAL IMPROVEMENT AND POWER DISTRICT, an agricultural improvement district, <br><br> Defendants. | Case No. <br><br> **COMPLAINT** <br><br> (Declaratory Action) |

Plaintiff, Roosevelt Irrigation District ("RID" or the "District") alleges as follows:

## INTRODUCTION

1. This is a declaratory judgment action to determine the rights of RID and the Salt River Valley Water Users' Association (the "Association") and the Salt River Project Agricultural Irrigation and Power District (the "SRP District") (collectively referred to as SRP") under a series of contracts entered into between the District and the Association. The contracts are referred to as the 1921 Agreement, the 1927 Agreement, and the 1950 Agreement

(collectively the "East Side Well Agreements").  The East Side Well Agreements relate to District wells, referred to as the "East Side Wells", located within the boundary of SRP that the District uses to deliver groundwater to District lands.

2. The United States Secretary of the Interior approved the 1921 and 1927 Agreements, although the United States is not a party to the Agreements.

3. SRP claims that the District's legal right to pump from the East Side Wells expires in 2020 or thereafter.  RID claims that the express language of the East Side Well Agreements, the deed that transferred SRP's interest for certain of the East Side Wells, and A.R.S. § 45-494 give RID the right to pump groundwater from these wells on and after 2020.

4. This is a declaratory judgment action brought pursuant to 28 U.S.C. § 2201 to declare the rights of the parties under the East Side Well Agreements, the deeds conveying some of the East Side Wells to RID, and A.R.S. § 45-494, the statute giving RID the right to pump from the East Side Wells on and after 2020.

5. RID initially brought this action against SRP in the Superior Court of Maricopa County, Arizona (the "State Court").  *Roosevelt Irrigation Dist. v. Salt River Valley Water Users Ass'n*, CV2014-008706 (Ariz. Super. Ct. dismissed Oct. 31, 2014) (the "State Court Action"). The State Court dismissed the case without prejudice because, among other reasons,[1] it found the United States was a required party to be joined under Rule 19, *Arizona Rules of Civil Procedure*, based on the United States' approval of the East Side Well Agreements.  A true and correct copy of the Minute Entry dated October 31, 2014 is attached hereto and is incorporated herein by reference as Exhibit 1.  The State Court directed RID to bring this declaratory judgment action against the United States based on the allegations made by the SRP.

6. RID asked the State Court to reconsider its decision because RID did not believe this Court had jurisdiction to decide this matter, and because RID did not believe the United States had waived its sovereign immunity.  The State Court rejected RID's motion stating that

---

[1] The State Court also dismissed the case because it found the title to the East Side Wells may be at issue based on allegations by SRP that the United States owned certain of the East Side Wells that had been conveyed by SRP and had some unidentified interest in the East Side Wells constructed by RID.  RID has brought, concurrently with this action, a Federal Quiet Title Action against the United States.

"[a]lthough Roosevelt makes a strong argument against the viability of its own anticipated federal lawsuit, the court is inclined not to reconsider its ruling unless and until the issue has been presented to and decided by the District Court."  A true and correct copy of the Minute Entry dated December 8, 2014 is attached hereto and incorporated herein by reference as Exhibit 2.

7. As a result, in order to protect its rights, RID is now in the unenviable position of bringing this Federal Declaratory Judgment Action, over which RID believes this Court lacks jurisdiction, and in which RID believes the United States has not waived its sovereign immunity.

8. RID is filing, concurrently with this Complaint, a Motion to Determine Jurisdiction.  If RID is correct that this Court lacks jurisdiction, it will proceed back in Arizona State Court to have its rights determined.  If this Court has jurisdiction and the United States' sovereign immunity has been waived, then RID will proceed in this Court to have its rights determined.  RID seeks a forum in which it can have its rights declared.

## PARTIES

9. The District is a political subdivision of the State of Arizona.

10. The United States is a governmental entity.

11. The SRP District is a political subdivision of the State of Arizona.  The Association is an Arizona Territorial Corporation.

## JURISDICTION[2]

12. This Court has jurisdiction over civil actions arising under the law of the United States.  28 U.S.C. § 1331.

13. At the oral argument on the Motion to Dismiss in State Court, SRP claimed the Reclamation Act applied to RID's claim and provided jurisdiction to the United States.  A true and correct copy of the transcript, at p. 5, lns. 24-p. 6, ln. 1 is attached hereto and incorporated herein by reference as Exhibit 3.

---

[2] As outlined in RID's Motion to Determine Jurisdiction filed concurrently herewith, RID does not believe that jurisdiction is proper; however, if this Court determines otherwise, RID will proceed pursuant to the authority cited in this section.

14. The Reclamation Reform Act, 43 U.S.C. § 390uu, provides as follows:

> Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law. The United States, when a party to any suit, shall be deemed to have waived any right to plead that it is not amenable thereto by reason of its sovereignty, and shall be subject to judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the same manner and to the same extent as a private individual under like circumstances. Any suit pursuant to this section may be brought in any United States district court in the State in which the land involved is situated.

15. The Reclamation Reform Act defines "contract" to mean "any repayment or water service contract between the United States and a district providing for the payment of construction charges to the United States including normal operation, maintenance, and replacement costs pursuant to Federal Reclamation law." 43 U.S.C. § 390bb(1).

16. The East Side Well Agreements are not between RID and the United States.

17. The East Side Well Agreements are not repayment or water service contracts providing for the payment of construction charges to the United States, including normal operation, maintenance, and replacement costs.

18. In *Orff v. United States*, 545 U.S. 596, 125 S. Ct. 2606, 162 L. Ed. 2d 544 (2005), the Supreme Court held that 28 U.S.C. § 390uu did not provide a waiver of the United States' sovereign immunity, but concluded that it permits consent to join the United States in an action between other parties when the action requires construction of a reclamation contract and joinder of the United States is necessary. It does not permit a plaintiff to sue the United States alone.

19. In *Orff v. United States*, 545 U.S. 596, 125 S. Ct. 2606, 162 L. Ed. 2d 544 (2005), and its progeny, Federal jurisprudence has repeatedly held that a party may not directly sue only the United States pursuant to 43 U.S.C. § 390uu even when non-federal parties are also named as defendants in the action.

20. The Administrative Procedure Act may waive the sovereign immunity of the United States to review final agency actions or to compel the United States to take a required,

discrete agency action that it is demanded by law to take. Here, there is no final agency action or discrete agency action that the Bureau of Reclamation was demanded by law to take.

21. If this Court determines that it has jurisdiction, venue will be proper under 28 U.S.C. § 1391(b)(2).

## GENERAL FACTUAL ALLEGATIONS

**A.    1921 AGREEMENT**

22. On August 25, 1921, the Association entered into an agreement (the "1921 Agreement") with Carrick & Mangham Agua Fria Lands & Irrigation Company (the "Company''). A true and accurate copy of the 1921 Agreement is attached hereto and incorporated herein by reference as Exhibit 4.

23. The 1921 Agreement was approved by the Secretary of the Interior.

24. The purpose of the 1921 Agreement was to require the Company to pump a minimum amount of groundwater per year from certain Association lands. The Company was to put the groundwater it pumped from these lands to beneficial use on 35,000 acres of other land in close proximity to the Association's lands that had not previously been irrigated. These 35,000 acres of land would be formed into an irrigation district to which the Company would transfer and assign the 1921 Agreement. *See* Exh. 4, p. 1 ("WHEREAS it is proposed to form said 35,000 acre tract into an irrigation district under the laws of the State of Arizona to which district this contract may be assigned and to irrigate said tract through the medium of said irrigation district . . . ."). The Association would also provide electricity to pump from the wells from which the groundwater would be withdrawn.

25. The 1921 Agreement granted to the Company the right to install an unlimited number of wells within certain Association lands from which to pump groundwater and to convey that water to the lands within the proposed irrigation district, but required the Company to purchase from the Association or build a minimum of 50 wells to pump the water from such Association lands. The Association also granted to the Company all waste and pumped waters that flowed to the end of the Association canals and ditches which the Association could not put to beneficial use.

26. The 1921 Agreement required the Company to pump from these wells a minimum of 70,000 acre feet of water per year for at least 99 years.

27. In the 1921 Agreement, the Association agreed to supply electrical power to the wells for 99 years.

28. The 1921 Agreement did not limit or restrict the Company's ability to own or operate the wells for a 99-year term, but *obligated* the Company to pump these wells for a minimum of 99 years. *Nothing* in the 1921 Agreement requires that RID must stop pumping at that time.

### B.  ASSIGNMENT OF THE 1921 CONTRACT TO THE DISTRICT

29. On June 4, 1923, RID was formed under the laws of the State of Arizona. A true and correct copy of the Resolution and Order Declaring the Roosevelt Irrigation District Duly Organized and Declaring the Election of Directors in and for Said District is attached hereto and incorporated herein by reference as Exhibit 5.

30. On July 11, 1923, the Company assigned its rights under the 1921 Agreement to RID. A true and correct copy of the Assignment is attached hereto and incorporated herein by reference as Exhibit 6.

### C.  THE 1927 AGREEMENT

31. On February 3, 1927, the Association and RID entered into a Supplemental Agreement, amending and supplementing the 1921 Agreement (the "1927 Agreement"). A true and accurate copy of the 1927 Agreement is attached hereto and incorporated herein by reference as Exhibit 7.

32. Similarly to the 1921 Agreement, the 1927 Agreement was approved by the Secretary of the Interior. *See* Exh. 7 at p. 14.

33. The 1927 Agreement amended the 1921 Agreement by, among other things, increasing the minimum annual pumping requirement of RID to 85,000 acre feet per year, phased in over a period of years, and removing the 99-year term on RID's minimum pumping obligation. The 1927 Agreement expanded the area from which RID could pump to additional lands within the Association boundaries.

34. In the 1927 Agreement, the Association agreed to provide electricity to RID, for a term of 99 years, for the East Side Wells.

35. The 1927 Agreement expressly provided that the "use of water within the District for irrigation or for any other purposes beneficial to the lands, landowners, or residents within the District shall be construed as 'beneficial use' as said expression is used herein."

36. Nothing in the 1927 Agreement limits the ability of RID to own or operate the wells beyond 99 years. However, the Association's obligation to provide electricity was limited to 99 years from the effective date of the 1927 Agreement.

37. Pursuant to the 1927 Agreement, the Association agreed to transfer ownership, without any reservations, of certain well sites, and pumping equipment, which were identified in Exhibit B to the 1927 Agreement. Specifically, the 1927 Agreement states that SRP agreed

> to sell and convey to District, by good and sufficient instruments of transfer and conveyance, *free and clear of all liens and encumbrances* and District agrees to purchase and pay for *all right, title, claim and interest* which the Association has in and to certain twenty-six (26) pumping plants consisting of wells with pumps, motors, houses, and appurtenant appliance and equipment, and certain ditches with appurtenant structures and connections for carrying water produced by said pumping plants as more particular set forth and described in "EXHIBIT B." (Emphasis added).

Exh. 7 at ¶C.

38. Exhibit B to the 1927 Agreement sets out the legal description of 26 pumping plants and approximately 15 and 3/4 miles of pump laterals (ditches) which were to be sold to RID.

39. The United States approved the 1927 Agreement by the following language:

> Approved, Feb. 12, 1927, on condition that the amendment of paragraph 7 of the 1921 agreement, page 5 hereof, shall be construed as providing for the possession of and use by the district of the ditches, if any, shown on page 7 of Exhibit "B," the title to which stands in the name of the United States. No transfer of title to such ditches is authored or intended.
>
> E.C. Finney,
> First Assistant Secretary of the Interior.

Exh. 7 at p. 14.

- 7 -

### D. THE ASSOCIATION GRANTED FEE TITLE TO "CONVEYED WELLS"

40. A deed conveying fee title to the well sites and conveying use and possession of the pump laterals was recorded on January 20, 1928, at Book 218 of Deeds pages 58, 59 and 60 (the "Deed"). A true and accurate copy of the Deed is attached hereto and incorporated herein by reference as Exhibit 8.

41. The Deed provides that the Association "granted, sold, conveyed and transferred … free of all liens and encumbrances, unto said Roosevelt Irrigation District, *all of the right, title, claim and interest* which said Salt River Valley Water Users' Association has in and to certain twenty-six (26) pumping plants, consisting of wells with pumps, motors, houses and appurtenant appliances and equipment, and ten (10) certain ditches with appurtenant structures and connections for carrying water produced by the aforesaid pumping plants, . . .." Exh. 8 at p. 1. By the Deed, the Association transferred ownership of the 26 wells permanently and irrevocably to RID (hereinafter referred as the "Conveyed Wells") for a permanent supply of water.

42. The Deed does not in any manner restrict or limit RID's ability to pump from the Conveyed Wells after 2020.

43. The Deed does not in any manner restrict or limit RID's ability to pump from the Conveyed Wells beyond 99 years.

44. The Deed was not approved by the United States, and contained no reservation of any interest in the Conveyed Wells for the benefit of the United States. *See* Exh. 8 at p. 8.

45. The Deed does provide that the United States retained ownership of the ditches, but that the Association was conveying whatever interest it had in the ditches permanently and irrevocable to RID:

> It is understood by the grantee that the title to certain of the aforesaid pump laterals is vested in the United States of America, and that in accordance with the approval of the supplemental agreement between the grantor and the grantee herein, approved by E. C. Finney, First Assistant Secretary of the Interior, on February 12, 1927, this instrument conveys to the district only the right to the possession of and use by the district of said ditches as contemplated by the agreements now existing between the grantor and the grantee herein, as duly approved by the Secretary of the Interior, and does not transfer the title to said ditches.

Exh. 8 at p. 7.

### E. THE DISTRICT CONSTRUCTED ADDITIONAL WELLS WITHIN THE BOUNDARIES OF THE ASSOCIATION.

46. In addition to the Conveyed Wells, RID constructed additional wells within the Association lands as contemplated by the 1921 Agreement, as supplemented by the 1927 Agreement (the "Constructed Wells"). All of the Constructed Wells within the boundary of the Association are owned and operated by RID. The Conveyed Wells and the Constructed Wells, are referred to as the "East Side Wells."

47. RID also developed wells within the boundaries of the District. These wells are often referred to as the "West Side Wells."

48. The East Side Wells supply the District the vast majority of water it provides to the landowners in the District. Without the East Side Wells, the District would be crippled in its ability to serve water to landowners within the District.

### F. THE 1950 AGREEMENT

49. A dispute arose between the Association and the District regarding the average amount of water the District was entitled to pump under the 1921 Agreement, as supplemented by the 1927 Agreement. The Association sued RID in State Court, and the United States was not made a party to that lawsuit.

50. To resolve the dispute, on May 31, 1950, the Association and RID entered into an agreement (the "1950 Agreement"). A true and accurate copy of the 1950 Agreement is attached hereto and incorporated herein by reference as Exhibit 9.

51. The 1950 Agreement provides that RID cannot pump more than 725,000 acre-feet of water in any consecutive five-year period, or 155,000 acre-feet in any given year, within SRP's service area. Exh. 9 at p. 2, ¶2.

52. The 1950 Agreement acknowledged that the 1921 Agreement, as supplemented by the 1927 Agreement, confirmed the existence of RID's right to pump groundwater from the East Side Wells. Exh. 9 at p. 4, ¶4.

53. The 1950 Agreement contains no termination date or reference to any date at which RID's right to pump groundwater from the East Side Wells would cease.

## G. SRP'S OBLIGATION TO PROVIDE ELECTRICITY TO THE EAST SIDE WELLS WAS SPLIT OFF INTO A SEPARATE AGREEMENT

54. Effective July 1, 1988, the SRP District and RID entered into a Power Sale and Service Agreement (the "1988 Power Agreement"). A true and correct copy of the 1988 Power Agreement is attached hereto and incorporated herein by reference as Exhibit 10.

55. The 1988 Power Agreement only superseded the provisions of the Agreements of 1921, 1927, and 1950 dealing with electric power and all other provisions of the Agreements of 1921, 1927, and 1950 remained in full force and effect. Exh. 10 at ¶6.1

56. The term of the 1988 Power Agreement was to continue in force until September 30, 2004. Id. at ¶5.1.

57. The SRP District and RID entered into two interim power agreements after the 1988 Power Agreement expired.

58. On June 30, 2005, the SRP District and RID entered into a Power Services Master Agreement (the "2005 Power Agreement"). The 2005 Power Agreement is attached hereto and incorporated herein by reference as Exhibit 11. The 2005 Power Agreement provided that it would "supersede only those provisions of the Agreements of 1921, 1927, and 1950 pertaining to the purchase, sale, supply, delivery, transmission, and distribution of electric power and energy by SRP to District, all other provisions of the Agreements of 1921, 1927, and 1950 shall remain in full force and effect." Exh. 11 at ¶2.8. The power contracts did not change any provision of the East Side Well Agreements and therefore have no impact on the District's ability to pump and transport the water from the East Side Wells after 2020.

59. The 2005 Power Agreement continues in effect for a term of about 19 years, well after the alleged 2020 termination date. Id. at ¶ 5.1

### H. THE 1921, 1927, AND 1950 AGREEMENTS DO NOT LIMIT RID'S ABILITY TO PUMP ITS WELLS AFTER 2020

60. Nowhere do the 1921, 1927, or 1950 Agreements prohibit RID from pumping groundwater from the East Side Wells after 2020 and transporting that water for use within the District.

61. The 1921 Agreement required RID to pump the East Side Wells for a term of 99 years. The 1927 Agreement deleted the 99 year term. The 1927 Agreement obligated the Association to provide electricity to the East Side Wells for a term of 99 years, but this obligation had been superseded by the obligations in the 1988 and 2005 Power Agreements, which expressly state that no provision of the 1921, 1927, or 1950 Agreements are affected except the provisions dealing with the supply of electricity. Exh. 10 at ¶6.1; Exh. 11 at ¶2.8.

62. The 1950 Agreement limited RID's ability to pump more than 155,000 acre feet per year from the East Side Wells. Exh. 9 at ¶2. It did not limit the right of RID to pump its East Side Wells beyond 2020.

63. The Deed conveying fee title to 26 of the East Side Wells in the 1927 Agreement did not limit RID's ownership of the Conveyed Wells in any manner nor did it limit RID's rights to pump from the East Side Wells beyond 2020. Exh. 8.

### I. RID'S RIGHT TO PUMP THE EAST SIDE WELLS IS CONFIRMED AND AUTHORIZED BY ARIZONA LAW

64. RID's right to pump its East Side Wells within the Association lands and deliver that groundwater for use within RID's boundaries has been recognized and authorized by the Arizona Legislature at A.R.S. § 45-494:

In an initial active management area established pursuant to section 45-411:

1. *An irrigation district existing and engaged in the withdrawal, delivery and distribution of groundwater as of January 1, 1977 shall have the right, subject to section 45-496 and section 45-493, subsection D*:

(a) To withdraw and transport groundwater within its service area for the benefit of landowners within its service area, and the landowners are entitled to use the groundwater delivered, provided claims of landowners to irrigation grandfathered rights or type 1 or 2 non-irrigation grandfathered rights shall

Case 2:15-cv-00448-GMS   Document 1   Filed 03/11/15   Page 12 of 14

> be subject to article 5 of this chapter.
>
> (b) *If legally withdrawing and transporting groundwater from outside its service area for use within its service area as of January 1, 1977, to continue to withdraw and transport the amount of groundwater legally being withdrawn as of January 1, 1977.*

A.R.S. § 45-494(1)(a), (b). (Emphasis added).

**J. THE ARIZONA DEPARTMENT OF WATER RESOURCES HAS FOUND THAT RID MAY USE ITS EAST SIDE WELLS FOR ASSURED WATER SUPPLY PURPOSES.**

65. Assured water supply determinations require that before development can occur in an Active Management Area, the development must establish that it has a 100-year supply of water for the development.

66. On October 21, 2013, after reviewing the 1921, 1927, and 1950 Agreements, the Arizona Department of Water Resources ("ADWR") found that the duration of the Agreements does not affect the legal availability of groundwater pumped by RID for purposes of assured water supply determinations. The ADWR letter dated October 21, 2013, is attached hereto and incorporated herein by reference as Exhibit 12.

**K. SRP HAS INTERFERED WITH RID'S ONGOING EFFORTS TO CONDUCT RID'S BUSINESS BY STATING TO ADWR AND OTHER THIRD PARTIES THAT RID LOSES ITS ABLITY TO PUMP THE EAST SIDE WELLS AFTER 2020.**

68. On January 9, 2014, RID filed an application to renew RID's groundwater savings facility permit, Permit Application No. 72-572386.0004 ("GSF Application"). A true and accurate copy is attached hereto and incorporated herein by reference as Exhibit 13.

69. On April 25, 2014, SRP objected to RID's GSF application, asserting that RID's right to pump groundwater from the wells referenced in the 1921 Agreement, and the supplements thereto, expires in 2020. A true and accurate copy of SRP's objection to the GSF Application, without Exhibits, is attached hereto and incorporated herein by reference as Exhibit 14.

70. On June 9, 2014, RID responded to SRP's objection, indicating that it would agree to accept a GSF permit for a shorter time period, thereby allowing it the opportunity to seek

declaratory action with respect to its right to pump groundwater from the East Side Wells. A true and accurate copy of RID's response is attached hereto and incorporated herein by reference as Exhibit15.

71. Upon information and belief, SRP has told other third parties, including municipalities within the District service area, that RID is not able to pump its East Side Wells beyond 2020.

## COUNT I

(Declaratory Judgment)

72. The District realleges and incorporates by reference the foregoing allegations set forth in paragraphs 1 through 71 above.

73. On or about April 25, 2014, SRP asserted in writing that it interprets the 1921 Agreement as supplemented by the 1927 Agreement to mean that RID's rights to pump groundwater from the East Side Wells terminates on or after October 26, 2020.

74. SRP's position opposes RID's rights and is directly adverse and contrary to RID's interpretation of the East Side Well Agreements and the applicability to and legal effect of A.R.S. § 45-494 on the District.

75. RID does not believe that the United States has claimed any interest in the East Side Wells or that the United States has taken a position concerning whether RID must cease pumping groundwater from the East Side Wells after 2020. The United States is made a party to this action by virtue of the State Court ruling requiring RID to bring this action in Federal Court.

76. The District is entitled to a judgment declaring on or after October 26, 2020: 1) that RID's right to pump groundwater from its East Side Wells does not terminate as a result of any term or provision of the East Side Well Agreements; 2) that pursuant to A.R.S. § 45-494, RID's right to pump groundwater from its East Side Wells does not terminate on or after October 26, 2020; and 3) that there are no existing legal impediments to RID's continued pumping of the East Side Wells beyond 2020.

77. The District is entitled to recover its attorneys' fees pursuant to A.R.S. § 12-341.01.

**WHEREFORE,** the District prays for a judgment and decree in its favor and against Defendants as follows:

    A.    A judicial declaration

        1. that RID's right to pump groundwater from its East Side Wells and to transport that water for use within the District does not terminate under the East Side Well Agreements on or after October 26, 2020;

        2. that pursuant to A.R.S. § 45-494, RID's right to pump groundwater from its East Side Wells and to transport that water for use within the District is not terminated on or after October 26, 2020; and

        3. that there are no legal impediments to RID's continued pumping of the East Side Wells and right to transport that water for use within the District on or after October 26, 2020.

    B.    An award of reasonable attorneys' fees and costs incurred herein pursuant to A.R.S. § 12-341.01 and as otherwise allowed by law; and

    C.    An award of such other and further relief as the Court deems just and proper.

DATED this 11th day of March, 2015.

**RYLEY CARLOCK & APPLEWHITE**

/s/John C. Lemaster
John C. Lemaster
Sheryl A. Sweeney
Samuel L. Lofland
Naomi E. Thurston
One North Central Avenue, Suite 1200
Phoenix, AZ 85004-4417
Attorneys for Plaintiff