**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roosevelt Irrigation District, | No. CV-15-00448-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, *et al.*, | |
| Defendants. | |
| Salt River Project Agricultural Improvement and Power District, *et al.*, | |
| Counter-Claimants/ Cross-Claimants, | |
| v. | |
| Roosevelt Irrigation District, | |
| Counter-Defendant. | |
| and | |
| United States of America; Department, *et al.* | |
| Cross-Defendants. | |

At issue are the following Motions: (1) Defendants and Counterclaimants Salt River Project Agricultural Improvement and Power District ("the District") and Salt River Valley Water Users' Association's ("the Association") (collectively "SRP")[1]

---

[1] As a threshold matter, because the Association and the District filed their briefing jointly, the Court refers to them collectively as SRP throughout.

Motion for Partial Summary Judgment (Doc. 312, SRP MSJ), to which Plaintiff and Counterdefendant Roosevelt Irrigation District ("RID") filed a Response (Doc. 324, RID Resp.), and SRP filed a Reply (Doc. 334, SRP Reply); and (2) RID's Motion for Partial Summary Judgment (Doc. 314, RID MSJ), to which SRP filed a Response (Doc. 323, SRP Resp.), and RID filed a Reply (Doc. 332, RID Reply). The Court additionally will resolve SRP's Motion to Exclude the Testimony of Scott Snyder (Doc. 268).

Although the parties requested oral argument on the Motions for Summary Judgment, the Court finds the matters appropriate for resolution without such argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court will grant in part and deny in part each Motion.

**I.  BACKGROUND**

Again, the Court is tasked with determining the rights and obligations of RID and SRP under the parties' 1921 Contract, as amended in 1927 and 1950 (collectively, the "Contract"), and as ratified by Congress. The parties each previously moved for partial summary judgment on portions of RID's Complaint and SRP's Counterclaim. (*See* Docs. 108, 170.) On September 30, 2017, the Court issued a ruling on those Motions, denying SRP's Motion for Summary Judgment and granting in part RID's Motion for Summary Judgment. (Doc. 293, Sept. 30, 2017 Order.) In that Order, the Court granted RID summary judgment on Count I of SRP's Counterclaim, determining that the Contracts, as a matter of law, are not contracts entered into pursuant to the Warren Act, 42 U.S.C. §§ 523–25. (Sept. 30, 2017 Order at 14–19.)

At that time, the Court detailed the history of the Salt River Project, the contracts between the Association and the United States, and those circumstances that led the Association to enter into its original 1920 Agreement with Carrick and Mangham ("C&M")—RID's predecessor in interest. (Sept. 30, 2017 Order at 4–6.) The Court further discussed at length the terms of the 1921 Contract, the 1927 Amendments, the 1950 Amendments, and the passage of the Salt River Pima-Maricopa Indian Community

Water Rights Settlement Act. (Sept. 30, 2017 Order at 6–8.) The Court finds no further occasion to recount the facts here, and will discuss only additional facts as necessary.

During the pendency of the parties' earlier Motions, each party requested leave of the Court to file an additional motion for summary judgment, (Docs. 269, 273), and the Court granted those requests, (Doc. 311). Now, RID moves for partial summary judgment on its Complaint, in addition to Counts III, IV, V, and VI of SRP's Counterclaim. Similarly, SRP moves for partial summary judgment on RID's Complaint, in addition to Counts IV and VI of its Counterclaim.

## II. LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when: (1) the movant shows that there is no genuine dispute as to any material fact; and (2) after viewing the evidence most favorably to the non-moving party, the movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome of the suit under governing [substantive] law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" of material fact arises only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, the court must regard as true the non-moving party's evidence, if it is supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party may not merely rest on its pleadings; it must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. *Anderson*, 477 U.S. at 256–57 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

"A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Summary judgment must be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d 1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

### III. ANALYSIS

Both SRP and RID move for partial summary judgment as to RID's Complaint and as to Counts IV and VI of SRP's Counterclaim. Additionally, RID moves for partial summary judgment as to Count III of SRP's Counterclaim and for summary judgment as to Count V. The Court will address the Motions as they pertain to RID's Complaint first, before moving to those arguments pertaining to SRP's Counterclaims.

#### A. RID's Complaint

In its Complaint, RID requests a declaratory judgment "that pursuant to A.R.S. § 45-494, RID's right to pump groundwater from its East Side Wells and to transport that water for use within the District is not terminated on or after October 26, 2020." (Compl. at 14.) Both RID and SRP now move for summary judgment on this aspect of RID's Complaint. (SRP MSJ at 3–15; RID MSJ at 1–3.)

The Groundwater Management Act of 1980 ("the Act"), as codified at Arizona State Revised Statute Section 45-401 *et seq.*, provides in relevant part that:

> in an initial active management area established pursuant to § 45-411 . . . [a]n irrigation district existing and engaged in the withdrawal, delivery and distribution of ground water as of January 1, 1977 shall have the right, subject to § 45-496 and § 45-493, subsection D: . . . [i]f legally withdrawing and transporting groundwater from outside its service area for use within its service area as of January 1, 1977, to continue to withdraw and transport the amount of groundwater legally being withdrawn as of January 1, 1977.

A.R.S. § 45-494(1)(b).

No Court has previously interpreted this particular statutory provision of the Act, presenting an issue of first impression for this Court. Under Arizona law, a court's

"primary goal in interpreting statutes is to effectuate the legislature's intent." *Rasor v. Nw. Hosp., LLC*, 403 P.3d 572, 576 (Ariz. 2017). "If the statute is subject to only one reasonable interpretation," a court should apply that interpretation "without further analysis." *Glazer v. State*, 347 P.3d 1141, 1143 (Ariz. 2015). Courts do not read statutes in isolation, but rather analyze each portion of a statute "in context [to determine] their meaning." *Stambaugh v. Killian*, 398 P.3d 574, 575 (Ariz. 2017). Thus, a court should "look to the statute as a whole and . . . may also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance and to give effect to all of the provisions involved." *Id.*

RID's argument, in both its Motion and its Response to SRP's own Motion, can be distilled simply to one point: "right means right." (*See* RID MSJ at 2–3; RID Resp. at 7–10.) RID argues that because Section 45-494(1)(b) uses the term "right," the Act bestows upon RID a perpetual and inalienable entitlement to withdraw water, without regard to any other limitation or obligation that RID may have bargained for prior to its enactment., RID would have the Court ignore the forest for a single tree. When viewed in the context of the Act as a whole, RID's overly simplistic argument does not stand.

The Arizona State Legislature enacted The Groundwater Management Act as a comprehensive reform to state groundwater laws. As stated in the Act's preamble, the Legislature intended "to conserve, protect and allocate the use of groundwater resources of the state and to provide a framework for the comprehensive management and regulation of the withdrawal, transportation, use, conservation and conveyance of rights to use the groundwater in" Arizona. A.R.S. § 45-401; *see Cherry v. Steiner*, 543 F. Supp. 1270, 1274–75 (D. Ariz. 1982). The comprehensive code contained a number of features, principal among them the creation of Active Management Areas ("AMAs"). *Cherry*, 543 F. Supp. at 1275. Within those AMAs, the Act "generally prohibit[ed] new uses of groundwater" by imposing stringent regulations governing its withdrawal and use. *Id.; see Davis v. Agua Sierra Res., LLC*, 203 P.3d 506, 509 (Ariz. 2009) (citing A.R.S. § 45-451(A)(1)). The Act thus serves primarily to "limit[] . . . all groundwater rights" rather

than expand such rights. *See* Jon L. Kyl, *The 1980 Arizona Groundwater Management Act: From Inception to Current Constitutional Challenge*, 53 U. Colo. L. Rev. 471, 489 (1982).

Viewed in this light, the language of Section 45-494 is unambiguous. It does not, as RID suggests, serve to create a new perpetual groundwater right; instead, it affirms the right to transport and withdraw to the extent an irrigation district otherwise held that right prior to enactment. Kyl, *supra*, at 489 ("The ability of . . . private water companies to use groundwater under the service area provisions is not technically a water right. Rather, it is the same privilege previously enjoyed by such customers."). The language of the Section itself only further supports such a reading. As Section 45-494(1)(b) reads, it permits the withdrawal and transport only of groundwater *legally being withdrawn* as of January 1, 1977. [2] RID does not dispute that prior to entering into the 1921 Contract with the Association it had no right to enter onto Association lands to pump and transport the water that is the subject of the current dispute. (*See, e.g.*, Doc. 170 at 50 ("The 1921 Agreement as Amended provides RID a permanent water supply.").) The Arizona Supreme Court has detailed as much in early challenges to the authority of the Contract. *See Brewster v. Salt River Valley Water Users' Ass'n*, 229 P. 929, 930–31 (Ariz. 1924) ("The Association, so far as it can, gives or grants to the Company the right to enter on 48,960 acres of the saturated or water-logged lands of the Salt River project . . . for the purpose of pumping such water . . . ."). Although the Act may permit RID to withdraw and transport water pursuant to that Contract, it does not usurp the Contract's terms.

In sum, RID's argument relies on a broad, sweeping reading of Section 45-494(1)(b), which would untether a single section from the remainder of the Act. [3] But,

---

[2] SRP has argued in the alternative that RID's withdrawal and transportation of water off Association lands was not legal as of January 1, 1977. (SRP Resp. at 3.) Because the Court determines that the statute does not confer upon RID a new right, separate and apart from the contract, the Court need not reach this argument.

[3] As SRP rightly poses in a hypothetical, RID's interpretation of Section 45-494(1)(b) would result in the creation of a perpetual right to withdraw and transport water where only a short term right may have existed. (*See* SRP Mot. at 14.) For example, if an irrigation district entered into a month-long contract on December 20, 1976, to withdraw

RID offers no argument or evidence demonstrating that the Arizona Legislature intended to create broad, perpetual rights to groundwater irrespective of any other contractual obligation that an irrigation district may have previously incurred. Prior to entering into the 1921 Contract, as amended, RID had no right to withdraw water and transport it away from Association lands. RID's right to pump and transport water from Association lands remains subject to the restrictions and limitations of its bargain. If RID's rights under the Contract expire, the Act does not provide a failsafe.

Accordingly, the Court will deny RID's Motion for Summary Judgment on its Complaint and the Court will grant SRP partial summary judgment on RID's Complaint, as discussed above. The Court will additionally grant SRP summary judgment on Count IV of its Counterclaim because the Court's determination as to RID's Complaint necessitates such a ruling. Count IV of SRP's Counterclaim seeks a declaratory judgment that "RID has no right to pump water from within the boundaries of the [Salt River Reservoir District ("SRRD")] and to transport that water to lands outside the SRRD boundaries after the 1921 Agreement, as supplemented, is terminated or expires." In essence, such a Counterclaim is a counterpart to the declaratory judgment sought by RID, on which the Court has now granted SRP summary judgment. Although both parties have spilled significant ink on alternative arguments—such as whether *res judicata*, collateral estoppel, judicial estoppel, or federal law prohibit withdrawals absent the contract—the Court need not reach any of those arguments. Though each may be an alternate reason to reach the same conclusion, the Court need not do so here because RID offers only Section 45-494(1)(b) in support of its right to withdraw and transport of water. Section 45-494(1)(b) confers no such right. Instead, RID's rights are governed by the terms of its Contracts with the Association. Should its rights pursuant to the Contract expire, RID fails to demonstrate any basis for continued pumping and withdrawal within SRRD

---

water from outside its service area and to transport that water back for use within the district's own service area—assuming the legality of that withdrawal and transport—RID would read the Act to convert that month-long contract into a perpetual right. Such an interpretation simply does not comport with the Act as a whole.

- 7 -

boundaries. Thus, the Court will also grant SRP's Motion for Summary Judgment as to Count IV of its Counterclaim and deny RID's Motion as to the same count.

## B. Count III of SRP's Counterclaim

RID moves for partial summary judgment on Count III of SRP's Counterclaim, which seeks a declaratory judgment as to the purpose, place, and quantity of use of water under the terms of the Contract. (Countercl. ¶¶ 106–119.) Count III seeks two declarations in particular, both of which are at issue in RID's Motion. First, SRP seeks a declaration that: "RID may not continue to pump water from within the SRRD boundaries from a depth of more than fifty feet below ground surface and transport that water to lands outside the SRRD boundaries absent authority from the Association" and that "RID is precluded from continuing pumping . . . until such authorization is granted." (Countercl. at 50.) Further, SRP seeks a declaration that "the transfer of a portion of RID's right to receive Project water under the 1921 Agreement . . . is invalid because the purported transfer is to a third party non-irrigation district and because RID failed to obtain the approval of the association prior to assigning such right." (Countercl. at 50.) RID now moves for summary judgment as to each declaration sought.

### 1. 50-foot Provisions of the 1921 Contract

In its Motion, RID does not contest that the 1921 Contract contained a provision restricting pumping of water such that the water table was not lowered more than 50 feet below the surface (the "50-foot provision"). (RID MSJ at 6; *see* Doc. 109-2 at 56.) RID instead argues that the parties removed the 50-foot provision when altering the Contract in 1927. In support of this point, RID does not offer any new argument, but merely incorporates the arguments that it presented in its first Motion for Summary Judgment with regard to the purported 99-year term of the Contracts. (RID MSJ at 3–4.) The Court rejected this argument the first time that RID presented it, and rejects it again for the reason the Court articulated in its earlier Order. (Doc. 293 at 10–14.)

Similarly, RID once more advances the defense of laches, arguing that SRP's failure to assert a breach of the 50-foot term at any point during the previous 70 years

should foreclose it from asserting it now. In contrast to its earlier ruling, the Court agrees that the defense applies to this particular provision.

Laches is an equitable defense to a civil action. "To establish laches, a defendant must establish (1) a lack of diligence by the plaintiff, and (2) prejudice to the defendant." *Grand Canyon Tr. v. Tucson Elec. Power Co.*, 391 F.3d 979, 987 (9th Cir. 2004). Prejudice may take one of two forms: evidentiary or expectations based. *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 955 (9th Cir. 2001). "Evidentiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded or who have died." *Id.* On the other hand, expectations based prejudice requires a showing by the party asserting the defense that it "took actions or suffered consequences" because it relied on the plaintiff's failure to act. *Id.* A showing of either form of prejudice is sufficient for purposes of asserting the defense. *See id.* at 956.

In support of the Motion, RID offers excerpts from one of SRP's own experts, Robert Pane, who works as the Manager of Groundwater Resources for SRP. (Doc. 319-4, RID Separate Statement of Facts ("RID SSOF") ¶ 11). In his deposition, Pane offered two opinions particularly relevant to RID's defense. First, Pane testified that the average depth to groundwater surrounding the Wells at issue dropped more than 50 feet below the surface by 1947. (RID SSOF ¶ 14.) Second, Pane stated that the average groundwater levels surrounding the wells had not risen above the 50 foot mark since 1950. (RID SSOF ¶ 13a.)

In response, SRP offers two principal arguments. First, it contends that laches is a question rarely capable of being resolved on summary judgment because the defense "depends on a close evaluation of the particular facts." (SRP Resp. at 5.) But SRP does not offer any additional facts for the Court's consideration, nor does it even attempt to controvert the facts that RID offers in support of its argument on this point. (*See* Doc. 325, SRP Controverting Statement of Facts ("SRP CSOF") ¶ 13.) As the record stands, it is undisputed both that the depth surrounding the wells dropped below 50 feet in 1947 and that it has not risen back above since 1950. (*See id.*) On these facts, RID has

- 9 -

established that SRP either knew, or should have known, that RID was in continuous breach of the Contracts for over 60 years. Yet at no point prior to the filing of this suit did SRP attempt to assert that right under the Contract. Accordingly, RID demonstrates a lack of diligence by SRP.

Second, SRP asserts that RID fails to demonstrate how, precisely, it would suffer evidentiary prejudice. Here, RID attempts to protect itself from enforcement of a term to a contract which was first negotiated in 1921 and arguably removed in 1927. As the Court articulated in its earlier summary judgment order—as incorporated above—whether the term remains in the current contract is ambiguous. Because 90 years have passed since that amendment, it is irrefutable that all—or nearly all—of those who negotiated the 1927 Amendment have long passed. With such a long delay, evidentiary prejudice need not be explicitly demonstrated, but may be assumed. Accordingly, RID has demonstrated both a lack of diligence by SRP in asserting its claim for violations of the 50-foot provision and evidentiary prejudice due to that delay. The Court will thus grant RID's Motion as it pertains to the 50-foot provision.

### 2. Assignment of the Contract

Count III of SRP's Counterclaim also seeks a declaration "that the transfer of a portion of RID's right to receive water under the 1921 Agreement, as supplemented, is invalid because the purported transfer is to a third party non-irrigation district and because RID failed to obtain the approval of the Association prior to assigning such right."

Paragraph 19 of the 1921 Agreement provides that:

> This agreement shall not be assigned by the Company without the written consent of the Association first had and obtained, but the Association hereby agrees to consent to any assignment the Company may desire to make to any irrigation district formed and organized under the laws of the State of Arizona . . . .

The parties do not dispute, for the purpose of the pendent Motions, that the terms of Paragraph 19 remain part of the Contract despite the amendments to the Contract in 1927 and 1950.

"[G]eneral contract principles dictate that to prove an effective assignment, [one] must come forth with evidence that the assignor meant to assign rights and obligations under the contracts." *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 746 (9th Cir. 1993). Under Arizona law, "there must be evidence of an intent to assign or transfer the whole or part of a specific thing, debt, or chose in action, and the subject matter for the assignment must be described sufficiently to make it capable of being readily identified." *Certified Collectors, Inc. v. Lesnick*, 570 P.2d 769, 771 (Ariz. 1977).

Here no dispute exists between SRP and RID as to the existence of a written agreement between RID and Gallagher and Kennedy ("G&K"). (*See* Doc. 330-1, RID SSOF Ex. 57, G&K Agreement.) Rather, the only dispute remaining is the nature of the rights which RID conferred to G&K under the terms of that agreement. As RID argues in its Motion, the G&K Agreement does not operate as an assignment of any of RID's rights under the terms of the 1921 Contract, as amended; instead, RID argues that the agreement is more akin to a fee agreement between attorney and client. (RID Mot. at 11–13.) Upon review of that agreement, the Court reaches a similar conclusion. In exchange for G&K's efforts in conjunction with RID's CERCLA action, RID pledged to pay G&K with funds defined as:

> funds obtained on behalf of RID from various third parties, to the extent lawful and permissible, including limitation, PRPs, governmental entities or other parties . . . by or on behalf of RID in regard to the Project described above and proceeds from the sale of remediated water from RID wells located in the WVBA WQARF Site . . . .

(G&K Agreement at 5.)

No reading of that clause can support a finding by the Court that RID has impermissibly assigned its rights under the 1921 Contract, as amended. Rather, the natural reading of the agreement supports RID's contention—that the G&K Agreement is a fee arrangement rather than a transfer of rights to the water itself. This Court is not alone in reaching this conclusion, as Judge Ezra reached a similar conclusion during the course of RID's CERCLA action, finding that RID's "Agreement with G&K transfer[s] RID's profit of future remediated water to G&K." Order at 26, *Roosevelt Irr. Dist. v. Salt*

*River Project Agric. Improvement & Power Dist.*, No. 10-cv-00290-DAE-BGM, Doc. 1366 (D. Ariz. Nov. 22, 2016). Accordingly, RID presents sufficient evidence to shift the summary judgment burden to SRP.

In its Response, SRP cites to the deposition testimony of RID's superintendent, Donovan Neese, in an effort to create a genuine dispute of material fact. (SRP Resp. at 8 (citing Doc. 319-3, Neese Dep.).) In particular, SRP relies on Neese's testimony that the water sold under the G&K agreement would be "the water that's pumped from th[e] east side wells." (Neese Dep. 18:18-19:1.) Even in the light most favorable to SRP, the Court cannot conclude that Neese's testimony creates any genuine dispute of material fact as to the nature of the G&K Agreement. Although SRP may be able to show the location from which RID will pump the water that is the subject of the G&K Agreement, Neese's deposition establishes nothing more. (*See* Neese Dep. 15:1–19:22.) SRP introduces no evidence tending to show that RID transferred to G&K any right to *receive* water under the Contract; instead, SRP's evidence demonstrates only that RID transferred the rights to profits from the sale of water.[4] And SRP at no point offers any argument demonstrating why this Court should equate the right to receive profits from the sale of water to the right to receive the water itself, nor does SRP cite to any law supporting that proposition. (*See* SRP Resp. at 7–8.) Without such evidence, argument, or legal authority, SRP fails to establish a genuine dispute of material fact on this issue. Accordingly, the Court will grant RID's Motion as to this portion of Count III of SRP's Counterclaim.

### C. Count V: Subflow Claim

RID next moves for summary judgment on Count V of SRP's Counterclaim, wherein SRP seeks a declaration that "RID has no right to pump appropriable water from within the SRRD boundaries and to transport that water to lands outside the SRRD boundaries," which implicates RID's right to pump subflow from its wells within the SRRD boundaries. (RID MSJ at 14–17.)

---

[4] SRP's own Response only supports this conclusion. (*See* SRP Resp. at 7 ("RID acknowledges . . . that it has entered into an agreement with G&K . . . whereby G&K is to receive the proceeds from future sales of water.").)

In its Motion, RID offers several arguments to support the Court's dismissal of this Counterclaim. Principally, RID argues that this Court should abstain from hearing SRP's subflow claim, pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in favor of the Gila River General Stream Adjudication currently proceeding in Maricopa County Superior Court. (RID Mot. at 15.) Although SRP concedes that this Court may exercise discretion by abstaining on this issue, it argues that the Court should proceed because several of the *Colorado River* factors weigh against abstention. (SRP Resp. at 14.) On the other hand, RID does not even attempt to engage with the *Colorado River* factors and makes only conclusory assertions in support of its argument.

Under *Colorado River*, a district court may abstain only when presented with "exceptional circumstances" that warrant such a course. *See Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989). If the court has any doubt as to "whether a factor exists," that court should resolve the factor against abstention. *Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir. 1990). "Only the clearest of justifications will warrant dismissal" under *Colorado River*. 424 U.S. at 819. Given RID's terse argument on the issue, the Court cannot conclude that *Colorado River* necessitates abstention in this matter. Nevertheless, where, as here, the action is one brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), *Colorado River* does not provide the proper test. *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ("Distinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions than that permitted under the 'exception circumstances' test of *Colorado River* . . . ."); *Chamberlin v. Allstate Ins. Co.*, 931 F.2d 1361, 1366 (9th Cir. 1991) ("The *Colorado River* test . . . does not apply where the Declaratory Judgment[] Act, 28 U.S.C. § 2201, is involved."); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (*en banc*). Instead, courts look to the standard articulated by the Supreme Court in *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and its progeny. *See Chamberlin*, 931 F.2d at 1366.

The terms of the Declaratory Judgment Act are "deliberately cast in terms of permissive rather than mandatory, authority." *See Gov't Emps. Co.*, 133 F.3d at 1223. Thus, even where it otherwise has subject matter jurisdiction,[5] a district court "possess[es] discretion in determining whether and when to entertain an action under the Declaratory Judgment Act." *Wilton*, 515 U.S. at 282. Courts should "ascertain whether the questions in controversy between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court." *Brillhart*, 316 U.S. at 495. Several factors are applicable to the Court's determination, such as whether the claim would involve "needless determination of state law issues," encourage "forum shopping," and create "duplicative litigation." *Gov't Emps. Ins. Co.*, 133 F.3d at 1225; *see also R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011). Ultimately, however, considerations of judicial economy, comity, and federalism inform the court's decision whether to abstain. *Gov't Emps. Ins. Co.*, 133 F.3d at 1226.

Here, RID presents no evidence, nor does the Court find any in the record, that SRP has engaged in selective forum shopping of the subflow claim. Rather, the record reflects that SRP asserted its subflow claim out of caution lest it forfeit such a claim by failing to bring it in this action. (*See* SRP Resp. at 14.) Thus, the Court finds that this factor does not weigh in favor of abstention. *See R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 976, 981–82 (9th Cir. 2011).

Still, each of the remaining two factors weighs in favor of declining to hear SRP's subflow claim. Under Arizona law, surface water—as distinct from groundwater—is "subject to the doctrines of prior appropriation and beneficial use." *In re Gen. Adjudication of All Rights to Use Water in Gila River Sys. & Source (Gila IV)*, 9 P.3d 1069, 1073 (Ariz. 2000). The concept of subflow is closely related to that of surface water and "protect[s] surface water rights against interference caused by the pumping of

---

[5] Because Count V of SRP's Counterclaim is raised separate and apart from any claim relating to a Reclamation Contract at issue, it appears that supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, is the sole basis for the Court's jurisdiction over Count V. (*See* Countercl. ¶ 6.)

- 14 -

groundwater." *Id.* at 1073–74. Thus, "how 'subflow' is determined" remains a critical question for all Arizona water users. *Id.* at 1074. As RID rightly argues, the state courts of Arizona have grappled with this precise issue—*i.e.* that of subflow and its appropriation—for a number of decades in the ongoing Gila River General Stream Adjudication. *See id.* at 1083 ("Given the over quarter-century history of, and specific statutory authorization for, this complex general stream adjudication, the [Arizona state] judiciary is clearly not only empowered but also expected to determine . . . issues related to subflow.") SRP's subflow claim thus raises a state law issue which the courts of the state are in the process of adjudicating; it is in those proceedings that SRP may seek relief. *See Owners Ins. Co. v. Young's Corral* LLC, No. CV 10-8208-SMM, 2011 WL 3759497, at *3 (D. Ariz. Aug. 25, 2011). Any effort by the Court to enter the fray would undoubtedly result in the "needless determination" of complex, unresolved state law issues and would create duplicate litigation in this Court and the Maricopa County Superior Court. Both factors thus weigh in favor of abstention.

Although the Gila River Adjudication is slow moving and both parties have expended considerable efforts in this matter, any determination by this Court on issues of subflow would only serve to muddy the waters that the courts of Arizona have endeavored to make clear. *See Brillhart*, 316 U.S. at 495 ("Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.") The Court thus finds that the principles of comity and federalism counsel against wading into the matter. Accordingly, the Court will dismiss Count V of SRP's Counterclaim, without prejudice.[6]

---

[6] Because the Court dismisses Count V of SRP's Counterclaim, the Court will also deny as moot SRP's Motion to Exclude the Testimony of Scott Snyder. (Doc. 268.) In its Fifth Supplemental Disclosure Statement, RID identified Snyder as a rebuttal witness to the testimony of Jon R. Ford, who was to provide testimony solely in support of Count V of SRP's Counterclaim. (Doc. 268-3 at 163–64.) It appears that there are no remaining bases for Snyder's testimony in this matter, thus obviating the need to exclude Snyder as a witness. If it becomes necessary, SRP may once more move to exclude Snyder pursuant to *Daubert*.

### D. Count VI of SRP's Counterclaim

Finally, each party moves separately for summary judgment on Count VI of SRP's Counterclaim, which seeks a declaratory judgment that "the Association's Articles of Incorporation prohibit RID from pumping water from Association member lands within the SRRD boundaries and transporting such water to lands outside the SRRD boundaries after the termination or expiration of the 1921 Agreement." (Countercl. at 56; *see* SRP MSJ at 16–17; RID MSJ at 13–14.) However, as the parties' briefs make clear, the Court's ruling on Count VI of the Counterclaim will be informed, and potentially obviated, by its forthcoming ruling on the pending dispositive motions in the Quiet Title Action, *Roosevelt Irrigation District v. United States*, No. 15-cv-00439—PHX-JJT (D. Ariz. filed Mar. 11, 2015). Accordingly, the Court will defer ruling on the parties' Motions on Count VI until it has ruled on those Motions pending in the Quiet Title Action.

## IV. CONCLUSIONS

Regarding the claims in RID's Complaint at issue in the parties' Motions, the Court concludes, as a matter of law, that Arizona Revised Statute Section 45-494 does not provide RID an independent right, separate and apart from its Contracts with the Association, to withdraw groundwater from the East Side Wells. SRP is thus entitled to partial summary judgment on RID's Complaint. Similarly, SRP is entitled to summary judgment on Count IV of its Counterclaim.

Regarding Count III of SRP's Counterclaim, SRP's claim that RID is in violation of the 50-foot provisions of the Contracts is barred by the doctrine of laches. Additionally, SRP fails to create a genuine dispute of material fact with regard to its claim that RID improperly assigned its right to pump and transport water under the Contract.

With respect to Count V of SRP's Claim, the Court abstains from entertaining SRP's subflow claim, pursuant to *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942). The Court dismisses Count V of SRP's Counterclaim, without prejudice.

Moreover, the Court defers ruling on the parties' Motions as to Count VI of RID's Counterclaim until it has resolved related issues in the parallel litigation to this matter.

IT IS THEREFORE ORDERED granting in part and denying RID's Motion for Summary Judgment (Doc. 314). The Court grants RID partial summary judgment on Count III of SRP's Counterclaim, as articulated in this Order. Additionally, the Court dismisses Count V of SRP's Counterclaim without prejudice. The Court will defer ruling on RID's Motion as to Count VI of SRP's Counterclaim until its resolves the pending Motions in the parallel proceeding. The Court denies the balance of RID's Motion.

IT IS FURTHER ORDERED granting in part SRP's Motion for Summary Judgment (Doc. 312). SRP is entitled to partial summary judgment on RID's Complaint, in particular RID's request for a declaration that it has a permanent right to withdraw water pursuant to A.R.S. § 45-494. The Court further grants SRP summary judgment on Count IV of its Counterclaim. The Court will defer ruling on SRP's Motion as to Count VI of its Counterclaim until it resolves the pending Motions in the parallel proceeding.

IT IS FURTHER ORDERED denying as moot SRP's Motion to Exclude the Testimony of Scott Snyder (Doc. 268).

Dated this 24th day of September, 2018.

                                          Honorable John J. Tuchi
                                          United States District Judge