**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roosevelt Irrigation District,<br><br>Plaintiff,<br><br>v.<br><br>United States of America, et al.,<br><br>Defendants. | No. CV-15-00448-PHX-JJT<br><br>**ORDER** |
| Salt River Project Agricultural Improvement and Power District, et al.,<br><br>Counter-Claimants/<br>Cross-Claimants,<br><br>v.<br><br>Roosevelt Irrigation District,<br><br>Counter-Defendant.<br><br>and<br><br>United States of America; Department, et al.<br>Cross-Defendants. | |

At issue is Plaintiff and Counter-Defendant Roosevelt Irrigation District's ("RID") Motion to Exclude Martin Bauer as an Expert (Doc. 272, Mot.), to which Defendants and Counterclaimants Salt River Project Agricultural Improvement and Power District ("the District") and Salt River Valley Water Users' Association ("the Association") (collectively "SRP"), and Defendants the United States, Department of Interior, and the Bureau of

Reclamation ("Reclamation) (collectively, "the Government") filed Responses (Doc. 299, Gov't Resp.; Doc. 300, SRP Resp.). No party requested oral argument on the Motion, and the Court finds the Motion ripe for resolution without such argument. *See* LRCiv 7.2(f). For the reasons that follow, the Court will deny in part and grant in part the Motion.

## I. BACKGROUND

The Court has, on several occasions, recounted the applicable factual background, (*See, e.g.*, Doc. 293, Sept. 30, 2017 Order), and will not do so again here. On February 17, 2017, the Government disclosed Martin Bauer—who works as a Manager in Reclamation's Asset Management Division—as an expert witness to testify in this matter. (Doc. 272-1. Mot. Ex. 1 at 3.) The Government later modified this disclosure on March 9, 2017.

Bauer graduated from California State University, Sacramento in 1984 with a Bachelor of Science in electronic engineering. (Doc. 272-2, Mot. Ex. 2, Bauer Dep. 26:14–21.) Reclamation hired Bauer immediately following his graduation. Bauer has remained with Reclamation over the past 34 years in a number of positions, including as the Operation Maintenance Manager of the Colorado Big Thompson and Frying Pan Arkansas Projects and as an electrical engineer with Reclamation's Central Valley Project Operations Office and with Reclamation's Operations and Maintenance Branch. (Bauer Dep. 23:4–26:6.) He has been in his current role as the Manager of Reclamation's Asset Management Division since 2014. (Bauer Dep. 13:20–21.)

In its most recent disclosure, the Government indicates that Bauer is expected to offer opinion testimony on the following topics:

> (1) that the wells operated by RID located within the boundaries of the Salt River Reservoir District ("SRRD") were originally constructed for authorized Project purposes; (2) that the wells operated by RID within the SRRD were constructed for authorized Project purposes and are integral to the operation of the Salt River Federal Reclamation Project; (3) and that the United States has a legal interest in those facilities under the Reclamation Act.

(Doc. 272-1, Mot. Ex. 1 at 17.) Bauer purports to base his opinions "on his background, training and experience as the Manager of the Asset Management Division of the Bureau

of Reclamation, the Act of June 17, 1902 . . . that authorized the Salt River Federal Reclamation Project, Reclamation policies . . . , and the 1917 contract with SRP." (Mot. Ex. 1 at 17.) RID now moves to preclude this proposed testimony in whole.

## II. LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence tasks the trial court with ensuring that any expert testimony provided is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1999). "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue. *Daubert*, 509 U.S. at 592–93. Factors to consider in this assessment include: whether the methodology can be tested; whether the methodology has been subjected to peer review; whether the methodology has a known or potential rate of error; and whether the methodology has been generally accepted within the relevant professional community. *Id.* at 593-94. "The inquiry envisioned by Rule 702" is "a flexible one." *Id.* at 594. "The focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Id.*

The *Daubert* analysis is applicable to testimony concerning non-scientific areas of specialized knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). However, the *Daubert* factors outlined above may not apply to testimony that depends on knowledge and experience of the expert, rather than a particular methodology. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (citation omitted) (finding that *Daubert* factors do not apply to police officer's testimony based on 21 years of experience working undercover with gangs). Instead, courts "are entitled to broad discretion when discharging their gatekeeping function" with respect to non-technical testimony. *Hankey*, 203 F.3d at 1168. The court's discretion extends not only to its decision "*whether* to admit expert testimony" but also to its decision "'*how* to test an expert's reliability.'" *Id.* (quoting *Kumho Tire Co.*, *Ltd.*, 526 U.S. at 152). An expert qualified by experience may testify in

the form of opinion if his or her experiential knowledge will help the trier of fact to understand evidence or determine a fact in issue, as long as the testimony is based on sufficient data, is the product of reliable principles, and the expert has reliably applied the principles to the facts of the case. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 579.

The advisory committee notes on the 2000 amendments to Rule 702 explain that Rule 702 (as amended in response to *Daubert*) "is not intended to provide an excuse for an automatic challenge to the testimony of every expert." *See Kumho Tire Co.*, *Ltd.*, 526 U.S. at 152. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595 (citation omitted).

Rule 704 provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." However, any witness—expert or lay—may not offer an opinion on an ultimate issue when that opinion is couched as a legal conclusion. "Resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *United States v. Weitzenhoff*, 35 F.3d 1275, 1287 (9th Cir. 1993).

### III. ANALYSIS

RID argues that Bauer lacks the specialized knowledge or training to testify as an expert on Subjects One and Two: (1) that the wells were originally constructed for authorized Project purposes; and (2) that the wells are integral to the operation of the Reclamation Project. (Mot. at 3–4.) Additionally, RID asserts that inconsistencies between the Fourth Disclosure Statement ("Disclosure") and Bauer's testimony "demonstrate his testimony is not relevant" and also "reflect his lack of qualification to render an opinion as to Subjects One and Two." (Mot. at 14.) As to Subject Three, that the United States has a legal interest in the facilities under the Reclamation Act, RID argues that the Court should preclude Bauer's testimony because it constitutes a legal conclusion on an issue central to the case. (Mot. at 15.)

### A. Bauer's Qualifications as an Expert Witness

RID first argues that Bauer is unqualified to offer expert opinions on Subjects One and Two because he "is an electrical engineer with no knowledge or training in property or ownership rights." (Mot. at 3.) RID contends that because Bauer is an electrical engineer, has previously testified only within his expertise as an electrical engineer, and "has no training, education, or specialized knowledge with respect to operations related to water development and delivery," he cannot testify as an expert on Subjects One and Two. (Mot. at 4.) The Court disagrees.

As SRP rightly points out, Bauer has spent the last five years as the manager of the Asset Management Division. (Bauer Dep. 13:17–21.) As manager, Bauer is responsible for "the yearly certification of Reclamation's property inventory," which requires reviewing all of Reclamation's assets and financial records at the regional level. (Bauer Dep. 16:17–18:4.) Bauer also oversees the Operations and Management ("O & M") branch, which works specifically on water and associated facilities by reviewing all dams, conveyance systems, structures, bridges, and roadways within Reclamation's purview and providing an assessment of how these facilities are functioning. (Bauer Dep. 16:1–14.) And in the course of his 34 years with Reclamation, Bauer has frequently interacted with the particularities of Reclamation law. (Bauer Dep. 47:18-48:18.) Bauer is thus qualified to offer his opinion on Subjects One and Two.

### B. Reliability of Bauer's Testimony Under *Daubert*

RID also argues that, even given all his experience in the field, Bauer cannot testify as an expert because he cannot satisfy the *Daubert* test. (Mot. at 14.) Specifically, RID argues that Bauer "had no criteria (i.e. methodology)[] for determining whether a particular facility was constructed for an 'authorized purpose' of the Salt River Project and/or integral to its operations." (Mot. at 14.)

For expert testimony based on scientific or technical knowledge, *Daubert* requires "reasoning or methodology [that is] scientifically valid and . . . properly can be applied to the facts in issue." 509 U.S. at 592–93. Based on that standard, RID argues that Bauer's

"methodology is not merely flawed, but non-existent." (Mot. at 16.) RID misses the mark with this argument because the *Daubert* factors do not fit perfectly when testimony depends on knowledge and experience, rather than a particular methodology. *Hankey*, 203 F.3d at 1169 (9th Cir. 2000). In those cases, the Court must determine the reliability of an expert's testimony, and keeping in mind that "the test of reliability is flexible, and *Daubert*'s list of specific factors neither necessarily nor exclusively applies . . . [r]ather, the law grants a district court . . . broad latitude." *Kumho Tire Co., Ltd.*, 526 U.S. at 141–42. That is the case here, as Bauer's knowledge of Reclamation's property was not reached through a scientific methodology. Rather, Bauer came to his conclusions after studying Reclamation law and overseeing Reclamation property for several decades. The Goverment and SRP point to cases where experts similarly relied on their own experience. *See Hankey*, 203 F.3d 1160 (9th Cir. 2000); *United States v. Alatorre*, 222 F.3d 1098 (9th Cir. 2000).

Having already determined that Bauer possesses the skill, knowledge, and experience to testify on Subjects One and Two, the Court finds that his testimony also satisfies the reliability threshold of non-scientific evidence.

### C. Inconsistencies in Bauer's Testimony

In its final argument as to why Bauer cannot provide his expert opinion on Subjects One and Two, RID asserts that "his opinions would not aid the Court because they are unreliable and lack credibility, as reflected by his . . . inconsistent and unintelligible opinions he rendered at his deposition." (Mot. at 16.) The Court has already addressed the reliability of Bauer's testimony based on his experience, and now finds that there are no inconsistencies in his testimony that justify granting RID's motion.

RID seems to base its conclusion that Bauer's testimony is inconsistent on the fact that "Bauer testified that he did not write or review, prior to it being served, his 'opinions' in either the Third or Fourth Supplemental Disclosure Statements." (Mot. at 2.)[1] RID takes

---

[1] RID also paints as "inconsistencies" several instances in Bauer's testimony. (Mot. at 8–10.) The Court finds that none of these instances "establish that [Bauer] is unqualified to render opinions on those Subjects," as RID argues they do. (Mot. at 8.) For example, Bauer's testimony that "[d]rainage, itself, is not an authorized project purpose," does not necessarily conflict with the overall conclusion of Subject One that the wells were

1   issue with the fact that "Bauer had never seen the actual disclosure statement until the day
2   of his deposition," and "testified that . . . he did not know who had prepared the disclosure,"
3   and that "the United States has not provided RID with text which incorporated or included
4   Mr. Bauer's edits to the Fourth Supplemental Disclosure." (Mot. at 3.) All this argument
5   is for naught, as Bauer was not required to author or approve any portion of the
6   Government's Disclosure Statements before his deposition.

7   Rule 26 distinguishes between those witnesses who must provide a written report of
8   "all opinions the witness will express and the basis and reasons for them," and those who
9   need not. Fed. R. Civ. P. 26(a)(2)(B)-(C). Only those witnesses who are "retained or
10  specially employed to provide expert testimony in the case or one whose duties as the
11  party's employee regularly involve giving expert testimony" must produce a report. Fed.
12  R. Civ. P. 26(a)(2)(B). If a witness is one who need not produce a written report, the party
13  propounding the expert must only disclose "the subject matter on which the witness is
14  expected to present evidence" and "a summary of the facts and opinions to which the
15  witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).

16  Bauer is regularly employed by a Defendant and, no evidence exists in the record to
17  suggest that he routinely gives expert testimony as part of his duties. Thus, Rule
18  26(a)(2)(B) does not require Bauer to provide a written report. All the Government was
19  required to do was submit a Disclosure which laid out the subject matter of Bauer's
20  expected testimony, and that is exactly what it did. As for Bauer's testimony being
21  "unintelligible," RID points to no authority that requires the Court to strike a witness just
22  because he stumbled over his words in a deposition. The Court has already satisfied itself
23  that Bauer has the required expertise to testify as an expert witness, and the manner in
24  which he presented his testimony as to Subjects One and Two does not disqualify him.

25  **D.    Testimony on the United States' Legal Interest in the Subject Property**

26  originally constructed for an authorized Project purpose. (Bauer Dep. 68:2–3.) Bauer goes
27  on to explain that "[i]rrigation is the project purpose . . . [and] drainage was integral to
    accomplishing the authorized project purposes." (Bauer Dep. 68:4–6.) The Court will not
28  determine at this stage whether the wells, if constructed for drainage necessary to the
    irrigation goals, qualify as being constructed for an authorized Project purpose, and it is
    not inconsistent for Bauer to try to explain the interplay of those two issues.

RID's final argument is that Bauer should be prohibited from testifying as an expert on Subject Three: that the United States has a legal interest in the wells under the Reclamation Act. (Mot. at 2.) The argument turns on RID's contention that whether "any federal Reclamation law applies to the Eastside wells, or how any law relates to the interpretation of the Deed or the 1921 Agreement . . . are all legal questions in the sole province of the Court." (Mot. at 15.)

RID is correct that a "legal opinion or conclusion cannot be offered as opinion testimony." (Mot. at 15.) While Rule 704 makes clear that testimony is "not objectionable just because it embraces an ultimate issue"—and an opinion stating that the Government holds a legal interest in the wells is an ultimate issue in this case—there is also a prohibition on witnesses providing legal conclusions to the jury. "It is well settled . . . that the judge instructs the jury in the law," and allowing witnesses to testify to legal conclusions raises the danger of invading that "distinct and exclusive province of the trial judge." *Weitzenhoff*, 35 F.3d at 1287.

While the Government does not address this argument in its Response, SRP concedes the fact that testimony on Subject Three "comes near the line of impermissible legal testimony." (SRP Resp. at 8.) Instead of disputing whether the testimony is a legal conclusion, SRP argues that the Court "should not preclude Mr. Bauer from testifying, as a lay witness, that it is the United States' position that it holds an interest in the lands and facilities at issue." (SRP Resp. at 8.) While Bauer could testify as both an expert and a lay witness, in neither capacity would he be permitted to testify to the legal conclusion that the United States has a legal interest in the wells and related property. The prohibition on legal conclusion testimony applies to expert and lay witnesses alike. *See United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001) ("The lay witness may not . . . testify as to a legal conclusion, such as the correct interpretation of a contract.") (citing *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1398 n.3 (9th Cir. 1985)).

Thus, the Court will grant RID's Motion as to Subject Three, to the extent that it requests, precluding Bauer from testifying as to the legal conclusion that the United States has a legal interest in the property.

## IV. CONCLUSION

The Court will grant in part and deny in part RID's Motion. The Court will not preclude Bauer from testifying as to Subjects One and Two because his testimony is reliable under the *Daubert* analysis. As to Subject Three, Bauer may not testify to the legal conclusion that the United States has a legal interest in the subject wells and other property.

**IT IS THEREFORE ORDERED** granting in part and denying in part RID's Motion to Exclude Martin Bauer as an Expert (Doc. 272), as specified above.

Dated this 7th day of March, 2019.

Honorable John J. Tuchi
United States District Judge